USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-30-18

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DEMETRIUS HILL, PRO SE,

    Plaintiff,

vs.

Esker L. Tatum, Warden (retired)
Kenneth Bork, Staff Attorney, MDC Brooklyn
Les Owen, Supervisory Attorney, FMC Devens
Norman Reid, Unit Manager, MCC New York
Jordan Hollett, Lieutenant (retired)
Johnny Mobley, Correctional Systems Officer, MCC New York
Nadina Jean, Comm. Public health svc.
Kyle St.John, Senior corr.officer

    Respondent.

A AMENDED
**COMPLAINT**
**JURY TRIAL DEMANDED**

Docket NO: 17 CV 4070



This action is brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for civil and Constitutional rights violations (U.S. Const. 4,5, 8); and the Federal Tort Claims Act (FTCA) 28 U.S.C. 1346(b), 2671-2680 for excessive force, ~~wrongful confinement via a complete denial of recreation for 30 plus days~~. And excessive force, inter alia.

## STATEMENT OF FACTS
## CLAIM ONE

All claims herein relate to when Plaintiff was confined at MCC-N.Y. from about June 2016 until about October 2016, on a Federal writ, from a civil litigation in the Eastern District of N.Y. (*Hill v. Laird*, 06 CV 126 (JS)) which was ultimately settled out. When Plaintiff arrived at MCC, he was placed in an area of the prison (located with the SHU) known as <u>10 south lower</u>, formally, and informally referred to as the "Terrorist unit." The tier has only 4 cells, and each cell door window has a metal plate attached to it, so staff can open look at a prisoner and then close the flap back so said prisoner cannot look out onto the tier or see anyone outside his cell. There is a shower inside the cell, yet Plaintiff was refused a shower curtain, and there is a camera that faces

directly into the shower and the toilet. So that Plaintiff had to bathe and use the bathroom in front of both male and female staff members on camera. Acting Lt. Mobley on more than several occasions came in front of Plaintiff's assigned cell leering at him, and making lewd comments about Plaintiff's genitalia. At one point after Plaintiff covered the shower with a sheet, Mobley threatened to write an incident report if Plaintiff did not remove it. Mobley stated he had a "right to see every part of" Plaintiff's body. That he was "getting off" on Plaintiff, and other comments demeaning and humiliating him each time. Plaintiff was forced to sleep on a concrete slab with an exceptionally thin mattress that was torn and soaked with a stinking mildew on the inside. There was a concrete stool to sit on, and concrete desk to sit at. There were 3 huge lights inside each cell that were kept on day and all night. Warden Tatum stated the lights were on constantly so staff could monitor Plaintiff on the several cameras inside the cell. Each cell was infested with roaches that came out of the (off) heater, and BLACK small worm type creatures that came out of the shower drain and the side panels of the shower. There are two vents inside the cell that blow nonstop freezing cold air, so that it is freezing in the summer time and until I left, it was freezing cold, yet Plaintiff was denied his request to buy long johns and a thermal top from commissary. This was done intentionally, with malice and sadistic intent to make Plaintiff miserable while at MCC, to force him to falter in his resolve to litigate his civil claims against MCC, to coerce him into dropping his civil suit and to retaliate against him for bringing said suit in the first place. Warden Tatum, the Captain and U. M. Reid repeatedly made this clear to Plaintiff in their statements "You can always go back to Lewisberg, just drop your lawsuit" (Tatum); "You asked to come to New York, we made it comfortable for you didn't we" (Captain); "You brought this on yourself always filing so get use to it playa" (U. M. Reid). The

back windows in the cells are completely blocked out with some type of film, so that it can't be seen out of, Plaintiff could not even see the sky.

## CLAIM TWO

Plaintiff was denied recreation for the first 30 to 45 days he was at MCC. Each day Plaintiff would ask for recreation and would be told "no" by the rec officer. Plaintiff complained about this to Assoc. Warden Regina Eldridge, who in turn asked the Captain (this was during their weekly rounds), the Captain stated "If he wanted rec he should of stayed at Lewisberg instead of filing lawsuits. He poses a unique threat to the safety security and orderly running of the institution." He then walked off. Plaintiff was so stressed out he began to have migraine type headaches, he experienced a complete loss of appetite and experienced rapid weight loss, he experienced sleep loss, which all aggravated his GERD as he could not eat and when he tried he would throw his food up. Those days of never getting out of the cell psychologically tortured him, and destroyed the normal functions of his body.

## CLAIM THREE

On September 2/3, 2016, both Lt. Hollet and Lt. Anderson began spraying OC gas/pepper spray (chemical agents) into the cell directly across from the cell Plaintiff was confined in.

As Plaintiff began yelling he was having trouble breathing, Lt. Mobley began smiling and encouraging both Lt. Hollet and Lt. Anderson to spray more gas, these lieutenants emptied what appeared to be two canisters of chemical agents into the cell and out onto the tier. Though Plaintiff banged on the door for help, Lt. Mobley directed two officers to manually hold Plaintiff's steel window flap closed on his door. Plaintiff was literally choking on the gas, and because the vents were blowing non-stop the gas continuously flowed into Plaintiff's cell. Plaintiff attempted to cover his nose and mouth with a t-shirt but the gas was too strong, he

3

began to choke, his nose kept running, his eyes were burning, he threw up and passed only to awake coughing again and again. On the following morning Plaintiff could barely breathe and during sick-call rounds immediately told the physician assistant ("PA") who upon seeing Plaintiff in obvious distress called a lieutenant and asked that Plaintiff be brought to Medical immediately. In Medical, Plaintiff was given <u>two</u> albuterol and ipratropium treatments. Further, Plaintiff had to be placed on prednisone (a steroid) in tapered dose. Plaintiff was intentionally subjected to cruel and unusual punishment and deliberate indifference.

## CLAIM FOUR

Nurse Jean was well aware that Plaintiff had severe asthma, as said nurse brought Plaintiff his asthma inhalers on a regular-basis as well as other medications. On September 2, 2016, Nurse Jean came on the range to speak to prisoner Jesse Rivera, at this time Plaintiff expressly reminded Ms. Jean that Plaintiff was asthmatic, and could not be subjected to OC gas pepper spray or any chemical agents. Ms. Jean tersely responded "I know how to do my job." Plaintiff told her that she needed to tell Lt. Hollet that, at which time Ms. Jean left the tier without responding. Plaintiff told Lt. Hollet several times he was asthmatic, and he could not stand to be gassed or have it sprayed around him, Lt. Hollet responded sarcastically "then what the hell were you doing in Lewisberg." He laughed and continued speaking to Rivera. Lt. Mobley came on to the tier, looked around, and stated as he left "If you got asthma guess I won't have to worry about you writing me up any more cause your going to die tonight." He then left the range/tier. Nurse Jean never rendered any form of aid after two cans of gas were sprayed right across the hall from Plaintiff and Plaintiff was in clear distress banging on the door and coughing and asking for help – no one helped, they left Plaintiff in that cell and failed to <u>decontaminate</u> the cell where the gas had been sprayed.

4

## CLAIM FIVE

U. M. Reid conspired with Les Owens and Kenneth Bork to obstruct Plaintiff's ability to litigate the civil case Plaintiff was in New York for. These defendants along with Warden Tatum, deprived Plaintiff of legal calls, even after two attorneys Abraham Hassen and Lamis Deek wrote to Warden wrote to him requesting Plaintiff be provided such legal calls. This severely impaired Plaintiff's attorney-client relationship with Lamis Deek, as her mail dropped off to Plaintiff in the legal mail drop box at MCC would not be delivered for two to three weeks, the same is true of Mr. Hassan's mail to Plaintiff. The legal mailings though properly marked were repeatedly opened outside Plaintiff's presence and documents, such as sample motions and settlement proposals were stolen. Les Owens and Kenneth Bork had plaintiff's legal mailings photocopied and then Owens would give the contents to Bork, who relayed those contents to the attorneys representing MDC defendants. Owens and Bork assembled a list of attorneys Plaintiff was only allowed to call and prevented Plaintiff from hiring several attorneys by calling those attorneys and scaring them into not working with Plaintiff. All the executive staff in this complaint including Reid, Owens, Bork and others conspired to keep Plaintiff confined in the terrorist unit without due process of law, and constituting cruel and unusual punishment – Plaintiff was kept in this unit even <u>after</u> Hon. Judge Seybert asked that Plaintiff be moved out of said unit (this occurred during a phone conference). Plaintiff's legal visitor Ms. Deek, Mr. Hassen, Stacy Richman, were continuously kept waiting <u>hours</u> before Plaintiff would be brought down to the legal visiting room.

CLAIM SIX

Plaintiff while pro se, contacted several attorneys to represent him in the litigation of Hill v. Laird, 06-cv-126, EDNY, which was pending a evidentiary hearing and trial, in front of Hon. Judge seybert. Conspiring bot with each other and the MCC administration, Les owens and Kenneth owens, and UM Reid worked in concert to prevent a favorable outcome, obstruct, and impede Plaintiffs ability to effective access to the courts, and unconstitutionally monitored Plaintiffs legal calls. Then provided information about said calls to warden Hatum and the ausa cho who represented the MDC officials. Defendants even went so far as to compile a list of attorneys (on their own) and prevent Plaintiff from contacting anyone outside this list they created, preventing Plaintiff from obtaining counsel. These defendants conspired to keep Plaintiff in the terrorist unit, after Hon. Judge Seybert repeatedly requested Plaintiff be moved to the regular special housing unit, this was done to impose cruel and unusual punishment on Plaintiff, and to psychologically torture him which in fact happened, as Plaintiff was unable to eat, or sleep and became exceptionally stressed out. On three seperate occaisions Plaintiff was denied legal visits with Rose myers, who Plaintiff was attempting to hire, these visits were denied while ms. myers was accompanied by attorn Abraham Hassen, this was not done with any other prisoner, as the mcc rule was as long as the legal assistant is with an attorney they can have legal visits with paralegals and legalassistants.

Ms. Myers was to work as a legal assistant for plaintiff and Mr. Hassen, yet repeatedly she was denied entry to MCC. The legal mail which Ms. Myers sent to the plaintiff would be opened outside of plaintiff's presence, and the contents retained by staff. The contents of this correspondence was then utilized as a basis for denial of all legal visits with Ms. Myers, and she was, thereafter, not permitted to visit with the plaintiff at MCC. That sanction prevented the plaintiff from filing motions for summary judgment in Hill v. Tisch, and filing a Complaint concerning conditions of confinement at MCC, and amending plaintif's § 2255 to include claims his prior state robbery conviction did not constitute a crime of violence; and filing a state post conviction CPL 440.10 to vacate said prior conviction. Plaintiff in federal custody had no access to state case law or motions and was seeking Ms. M;yers aid and assistance for these matters as well. This violated plaintiff's First, Fifth and Sixth Amendment rights. Those violations were purposefully and intentionally performed.

## CLAIM SEVEN

C.O. St.John repeatedly sexually harassed the plaintiff by verbally accusing him of being a faggot, to standing front of his cell and pressing his lips to the cell window in a kissing manner, to watching the plaintiff undress while in the

shower, to commenting on how hung plaintiff is when he observed plaintiff urinating. The plaintiff filed several PREA complaints on this Officer for pressing his lips to plaintiff's cell window and making kissing sounds. Since the foregoing occurred where a video camera captured it, those acts should have been preserved, however, the Lieutenant (who accepted plaintiff's complaint) did not keep it confidential. The Lieutenant informed C.O. St.John of the complaint, who then retaliated by composing a fictitious "Incident Report". It charged the plaintiff with refusing to stand for a count (written the same day which plaintiff filed his aforesaid complaint). The incident report was proven to be bogus, and dismissed because a video recording demonstrated its falsity. Thus, the evening watch Lieutenant did not process the incident report. Consequently, C.O. St.John took his incident report several days later to the same Lieutenant who had informed him of the plaintiff's PREA complaint. That Lieutenant proceeded to process the bogus incident report, which was in violation of Bureau of Prison policy, which requires all incident reports to be processed within 24 hours. Contrary to that policy and regulation, the Disciplinary Hearing Officer found the plaintiff guilty and imposed sanctions, i.e., loss of commissary for 90 days.

    Detective Reid issued the above-recited excessive sanction

to retaliate against the plaintiff for filing the Grievances about being denied legal visits and telephone calls, and failing to perform SHU rounds. The evidence will prove the sanction was totally disproportionate to the gravity of the rules violation and to what is imposed on other inmates for the identical misconduct, and, more importantly, that he deliberately refusted to dismiss the incident report for being processed several days passed the allowable 24 hours, and being retaliatory. The fact that the plaintiff's subsequent appeal was successful establishes the retaliatory nature of the incident report. However, the plaintiff was forced to comply with the sanctions, thus, it was a pyhrric victory, only. Both Defendants - St. John and Lt. Reid - retaliated against the plaintiff, albeit for different reasons and in different manners, yet, both defendants violated plaintiff First Amendment rights to petition the government for redress without retaliation.

## DAMAGES

Plaintiff seeks compensatory punitive and nominal damages for the Constitutional violations, and compensatory damages for the torts alleged herein.

I, Demetrius Hill, declare the foregoing facts true and correct.

Executed under penalty of perjury, Title 28 U.S.C. 1746, this _15_ day of _May_, 2018.

In Struggle,

*Demetrius Hill*
Demetrius Hill
Reg.# 68133-053
USP Terre Haute
P.O. BOX 33
TERRE HAUTE, IN 47808

6