UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

DEMETRIUS HILL,                                    :
                                                   :
                              Plaintiff,           :
                                                   :      17 Civ. 4070 (RWS)
                v.                                 :
                                                   :
ESKER L. TATUM, et al.,                            :
                                                   :
                              Defendants.          :
                                                   :

----------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT UNDER RULES 12(b)(1), 12(b)(6), AND 12(b)(2) AND, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**


GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2725
Facsimile: (212) 637-2702


CHARLES S. JACOB
Assistant United States Attorney
      – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………….....1

BACKGROUND………………………………………………………………………………….2

    A.  Alleged Conditions of Confinement at MCC (Claims One, Two and Five;
        Defendants Tatum and Reid, Owen, and Bork)…………….……………….2

    B.  The Alleged "OC Gas" Incident and Subsequent Medical Care
        (Claims Three and Four; Defendants Hollett, Mobley, and Jean)……...…………3

    C.  Plaintiff's Alleged Attempts to Seek Legal Advice in Connection with the
        EDNY Action (Claims Five and Six; Defendants Owen, Reid Bork, and Tatum)..4

    D.  Alleged Sexual Harassment and False "Incident Report" Allegations
        (Claims One and Seven; Defendants St. John and Reid)…………………………5

    E.  Plaintiff's Claims………………………………………………………………5

ARGUMENT………………………………………………………………..………………6

I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S
     FTCA CLAIMS………………………………………………………….………6

    A.  Legal Standards Governing Dismissal Pursuant to Rule 12(b)(1) of the Federal
        Rules of Civil Procedure……………………………………………………..6

    B.  Plaintiff Failed to Properly Present and Exhaust His FTCA Claims…..…………6

II.    DEFENDANT JEAN IS ENTITLED TO ABSOLUTE IMMUNITY…………….....8

III.   PLAINTIFF FAILS TO STATE A *BIVENS* CLAIM AGAINST ANY OF THE
     INDIVIDUAL DEFENDANTS……………………………………………….....9

    A.  Legal Standards for a Rule 12(b)(6) Motion to Dismiss…………………………9

    B.  No *Bivens* Remedy Is Available for Plaintiffs' Retaliation, Conditions of
        Confinement, Excessive Force, or Deprivation of Access to Courts Claims
        (Claims One, Two, Three, Five, Six, and Seven; Defendants Tatum, Bork, Owen,
        Reid, Hollett, Mobley, and St. John)…………………………………………10

    C.  Plaintiff Fails to State a Conditions of Confinement Claim Relating to His Cell
        Conditions and Denial of Recreation (Claims One, Two, and Five; Defendants
        Mobley, Tatum, Reid, Bork, and Owen)……………………………………...13

D.  Plaintiff Fails to State an Interference with Access to Courts Claim (Claims Five and Six; Defendants Reid, Owen, Bork, and Tatum)……………………………14

E.  Plaintiff Fails to State a Deliberate Indifference or Excessive Force Claim Against Mobley, Hollet, or Jean (Claims Three)…………………………………………15

F.  Plaintiff's Sexual Harassment Allegations Fail to State a Constitutional Claim (Claims One and Six; Defendants Mobley and St. John)………………………..18

G.  Defendants Are Protected by Qualified Immunity………………………………18

III.   PLAINTFF FAILED TO EXHAUST MANY OF HIS *BIVENS* CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS……………………………………………..19

A.  Legal Standards for PLRA Exhaustion and Summary Judgment……………19

B.  Plaintiff Did Not Properly Exhaust the Four-Step PLRA Process For Many of His Claims……………………………………………………………………21

IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT OWEN………………………………………………………………22

CONCLUSION………………………………………………………………………22

# TABLE OF AUTHORITIES

Cases

*Abdoulaye v. Cimaglia,*
    No. 15-cv-4921 (PKC), 2018 WL 1890488 (S.D.N.Y. Mar. 3, 2018) ................................. 12

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986) ............................................................................................................. 21

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009) ........................................................................................... 10, 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................... 9, 13, 14

*Banks v. United States,*
    No. 10-cv-6613 (GBD) (GWG), 2011 WL 4100454 (S.D.N.Y. Sept. 15, 2011) ................ 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................................... 9, 14

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971) .................................................................................................. 1, 2, 3, 11

*Boddie v. Schnieder,*
    105 F.3d 857 (2d Cir. 1997) ................................................................................................ 18

*Caidor v. Onondaga Cty.,*
    517 F.3d 601 (2d Cir. 2008) .................................................................................................. 9

*Cancel v. Goord,*
    No. 00-cv-2042, 2001 WL 303713 (S.D.N.Y. Mar. 29, 2001) ........................................... 14

*Carlson v. Green,*
    446 U.S. 14 (1980) ................................................................................................... 10, 11, 12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................................................. 21

*Connors v. Heywright,*
    No. 02-cv- 9988 (DC), 2003 WL 21087886 (S.D.N.Y. May 12, 2003) ................................ 6

*Corley v. City of New York,*
    No. 14-cv-3202 (GHW), 2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017) ............................ 14

*Darnell v. Pineiro,*
    849 F.3d 17 (2d Cir. 2017) ...................................................................................... 13, 15, 16

*Davis v. Goord,*
 320 F.3d 346 (2d Cir. 2003) ........................................................................................14

*Davis v. Passman,*
 442 U.S. 2280 (1979 ....................................................................................................11

*Demata v. N.Y. State Corr. Dep't of Health Servs.,*
 198 F.3d 233 (2d Cir. 1999) ........................................................................................17

*F.D.I.C. v. Great Am. Ins. Co.,*
 607 F.3d 288 (2d Cir. 2010) ........................................................................................20

*Farmer v. Brennan,*
 511 U.S. 825 (1994).....................................................................................................13

*Ford v. Fischer,*
 539 F. App'x 19 (2d Cir. 2013) ...................................................................................12

*Free v. Peikar,*
 No. 17-cv-00159, 2018 WL 1569030 (E.D. Cal. Mar. 30, 2018)................................12

*Ganek v. Leibowitz,*
 874 F.3d 73 (2d Cir. 2017) ..........................................................................................15

*Gonzalez v. Hasty,*
 269 F. Supp. 3d 45 (E.D.N.Y. 2017) ...........................................................................12

*Gorzynski v. JetBlue Airways Corp.,*
 596 F.3d 93 (2d Cir. 2010) ..........................................................................................20

*Hathaway v. Coughlin,*
 37 F.3d 63 (2d Cir. 1994) ............................................................................................16

*Howard v. Brown,*
 No. 15-cv-9930 (ER), 2018 WL 3611986 (S.D.N.Y. July 26, 2018)...........................15

*Hui v. Castaneda,*
 559 U.S. 799 (2010)........................................................................................................8

*Jones v. Harris,*
 665 F.Supp.2d 384 (S.D.N.Y. 2009) ...........................................................................18

*Lewis v. Clarkstown Police Dep't,*
 No. 11-cv-2487 (ER), 2014 WL 1364934 (S.D.N.Y. Mar. 31, 2014) .........................17

*Lipscomb v. United States,*
 No. 16-cv-7963 (NSR), 2017 WL 3835693 (S.D.N.Y. Aug. 31, 2017) .........................8

*Macias v. Zenk*,
　495 F.3d 37 (2d Cir. 2007) ...........................................................................................19

*Makarova v. United States*,
　201 F.3d 110 (2d Cir. 2000) ..........................................................................................6

*Manswell v. United States*,
　No. 9-cv-04102 (RJH), 2010 WL 3219156 (S.D.N.Y. Aug. 12, 2010)...........................13

*Martinez v. Aycock-West.*,
　164 F. Supp. 3d 502 (S.D.N.Y. 2016) ............................................................................9

*Martinez v. Simonetti*,
　202 F.3d 625 (2d Cir. 2000) ........................................................................................18

*McCarthy v. Dun & Bradstreet Corp.*,
　482 F.3d 184 (2d Cir. 2007) ........................................................................................20

*McCoy v. Goord*,
　255 F. Supp. 2d 233 (S.D.N.Y. 2003) ...........................................................................20

*McIntosh v. United States*,
　No. 14-cv-7889, 2016 WL 1274585 (KLK) ....................................................................6

*McNeil v. United States*,
　508 U.S. 106 (1993)......................................................................................................8

*Minnie Rose LLC v. Yu*,
　169 F. Supp. 3d 504 (S.D.N.Y. 2016) ...........................................................................22

*Morrison v. Nat'l Australia Bank Ltd.*,
　547 F.3d 167 (2d Cir. 2008) ..........................................................................................6

*Owusu v. Fed. Bureau of Prisons*,
　No. 02 Civ. 0915 (NRB), 2003 WL 68031 (S.D.N.Y. Jan. 7, 2003)................................7

*Page v. Breslin*,
　No. 02-cv-6030 (SJF)(LB), 2004 WL 2713266 (E.D.N.Y. Nov. 29, 2004)...................20

*Patterson v. Lilley*,
　No. 02-cv-6056 (NRB), 2003 WL 21507345 (S.D.N.Y. June 30, 2003) .......................17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
　609 F.3d 30 (2d Cir. 2010) ...........................................................................................22

*Petty v. Goord*,
　No. 00-cv-803, 2002 WL 31458240 (S.D.N.Y. Nov. 4, 2002).......................................21

*Point-Dujour v. U.S. Postal Serv.*,
    No. 02-cv-6840 (JCF), 2003 WL 1745290 n. 5 (S.D.N.Y. Mar. 31, 2003)......................7

*Porter v. Nussle*,
    534 U.S. 516 (2002)...........................................................................................................19

*Ross v. Blake*,
    136 S. Ct. 1850 (2016)......................................................................................................22

*Sims v. Artuz*,
    230 F.3d 14 (2d Cir. 2000) .......................................................................................15, 17

*Stevens v. City of New York*,
    No. 10-cv-5455 (PGG), 2011 WL 3251501 (S.D.N.Y. July 22, 2011) .........................16

*Sykes v. Bank of Am.*,
    723 F.3d 399 (2d Cir. 2013) ..............................................................................................9

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006) ............................................................................................22

*Thomas v. Metro. Correction Ctr.*,
    No. 09-cv-1769 (PGG), 2010 WL 2507041 (S.D.N.Y. June 21, 2010) ...........................7

*United States v. Kwai Fun Wong*,
    135 S. Ct. 1625 (2015)........................................................................................................7

*United States v. Vaszquez*,
    145 F.3d 74 (2d Cir. 1998) ................................................................................................6

*Vargas v. New York City Dep't of Corr.*,
    No. 17-cv-2544 (JGK), 2018 WL 3392873 (S.D.N.Y. July 12, 2018)...............15, 16, 17

*Wilkie v. Robbins*,
    551 U.S. 537 (2007)...........................................................................................................11

*Williams v. Correction Officer Priatno*,
    *829 F.3d 118* (2d Cir. 2016) ............................................................................................22

*Williams v. Fisher*,
    No. 02-cv-4558 (LMM), 2003 WL 22170610 (S.D.N.Y. Sept. 18, 2003) .....................18

*Winstead v. Matevousian*,
    No. 17-cv-0095, 2018 WL 2021040 (E.D. Cal. May 1, 2018) ......................................12

*Woodford v. Ngo*,
    548 U.S. 81 (2006).............................................................................................................19

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 ................................................................................. 10, 11, 12, 13

## Statutes

5 U.S.C. § 706 ................................................................................................. 11

28 U.S.C. § 2401(b) ...................................................................................... 6, 7

28 U.S.C. § 2675(a) ......................................................................................... 8

28 U.S.C. § 1346 ............................................................................................ 12

42 U.S.C. § 1997e(a) ...................................................................................... 19

## Rules

C.P.L.R. Section 302 ...................................................................................... 22

Fed. R. Civ. P. 56(a) ...................................................................................... 20

## Regulations

28 C.F.R. Part 542 ......................................................................................... 19

28 C.F.R. § 14.2 .............................................................................................. 7

28 C.F.R. §§ 542.10-19 .................................................................................. 22

28 C.F.R. §§ 542.13-15 .................................................................................. 20

## PRELIMINARY STATEMENT

Plaintiff Demetrius Hill ("Plaintiff") asserts causes of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against eight individuals (together, the "Individual Defendants") currently or previously employed by the Federal Bureau of Prisons ("BOP").  He also brings claims under the Federal Torts Claim Act (the "FTCA") that, liberally construed, are asserted against the United States of America ("United States").  In his Second Amended Complaint ("SAC"), Dkt. No. 15, Plaintiff alleges that Individual Defendants violated his constitutional rights by: (a) housing him in the "10 South Lower" section of the Metropolitan Correctional Center ("MCC"); (b) denying him recreation; (b) applying excessive force to Plaintiff when BOP staff used pepper spray against another inmate and denying him subsequent medical care; (c) interfering with Plaintiff' access to legal counsel and the courts; and (d) sexually harassing him.  Plaintiff claims that many of the Individual Defendants also retaliated against him because he brought a civil action in the United States District Court for the Eastern District of New York (the "EDNY Action").

Plaintiff's claims should be dismissed.  At the outset, defendant Jean is entitled to absolute immunity given her status as a Commissioned Officer in the Public Health Service.  No *Bivens* remedy is also available here for any retaliation, sexual harassment, excessive force, or conditions of confinement claims.  The Supreme Court has never recognized a *Bivens* remedy for such claims, and special factors including the availability of alternative remedies counsel against doing so here.  Nor has Plaintiff stated any state any excessive force, conditions of confinement, or sexual harassment claims in his complaint.  Sexual harassment is not a constitutional violation, and Plaintiff does not plausibly allege that any of the Individual Defendants were involved in many of the purported unconstitutional acts or acted with the requisite intent.

Plaintiff also failed to exhaust administrative remedies with regard to his FTCA claims, as well as many of his *Bivens* claims.  Last, the Court lacks personal jurisdiction over Defendant Owen. The Court should thus dismiss the SAC in its entirety.

## BACKGROUND

### A. Alleged Conditions of Confinement at MCC (Claims One, Two and Five; Defendants Tatum, Reid, Owen, and Bork)

Plaintiff is a convicted prisoner who, from approximately June 2016 to October 2016, was housed at MCC on a federal writ relating to the EDNY Action.  *See* Dkt. No. 15, SAC, at 1. Upon Plaintiff's arrival to MCC, officials housed him in an area within MCC known as "10 South Lower."[1]  *See id.*  His cell had a concrete stool, a desk, a shower and toilet.  *See id.* at 1-2. There were also "several" cameras inside the cell so that MCC staff members could monitor Plaintiff's activities, including a camera that faced the shower and bathroom.  *See id.*  The shower had no curtain; an unidentified individual at MCC denied Plaintiff's request for one.  *See id.*

According to Plaintiff, the cell was "infested" with roaches and "small worm type creatures," three large lights "were kept on day and all night," and two vents blew "nonstop freezing air" into the cell.  *See* SAC at 2.  Plaintiff's bed allegedly had a thin mattress that was "soaked with a stinking mildew," and the windows were blocked so that no light could pass through them.  *Id.* at 2-3.  Defendant Tatum told Plaintiff that the lights were kept on so that MCC employees could monitor Plaintiff using the cameras.  *See id.* at 2.  Plaintiff also asserts that defendant Tatum told Plaintiff he could "can always go back to [the prior facility where Plaintiff was housed], just drop your lawsuit," and that defendant Reid told Plaintiff that he

---

[1] The allegations of the SAC are accepted as true for purposes of this motion only.

"brought this on [himself] always filing." *Id.* at 2.  An unnamed "Captain" also allegedly made a similar statement.  *See id.*  According to Plaintiff, Reid, Owen, Bork, and unnamed others "conspired to keep" him in 10 South Lower after the United States District Judge presiding over the EDNY action asked that Plaintiff be moved from that location.  *Id.* at 5.

An unidentified "rec officer" allegedly denied Plaintiff recreation for the first approximately thirty to forty-days that he was housed at MCC.  *See id.* at 3.  Plaintiff complained about this denial to an Associate Warden, who in turn asked an unidentified "Captain" about this complaint.  *See id.*  Among other things, the "Captain" told Plaintiff that he posed "unique threat" to safety.  *See id.*  Plaintiff claims that the denial of recreation caused him injuries including migraine-type headaches and aggravation of a gastroesophageal reflux disease.  *See id.*

### B. The Alleged "OC Gas" Incident and Subsequent Medical Care (Claims Three and Four; Defendants Hollett, Mobley, and Jean)

On or about September 2 or 3, 2016, defendant Hollett and non-defendant "Lt. Anderson" allegedly sprayed two canisters of "OC gas/pepper spray" into a cell across the hallway from Plaintiff's cell.  *See* SAC at 3.  When Plaintiff complained, defendant Mobley allegedly "began smiling and encouraging" Hollett and Anderson to "spray more gas."  *See id.*  Although Mobley directed MCC officers to hold Plaintiff's steel window flap closed, the facility's ventilation system blew gas into Plaintiff's cell.  *See id.*  Plaintiff alleges that he told Hollett multiple times that he was asthmatic, and Hollett responded by stating "then what the hell were you doing in [the prior facility in which Plaintiff was housed]."  *See id.* at 4.  Defendant Mobley allegedly said that he would not need to worry about any complaint filed by Plaintiff because Plaintiff would "die" that night if he had asthma.  *See id.*  Plaintiff allegedly told defendant Jean, a nurse, that he was asthmatic and "could not be subjected to" the gas.  *See id.*  Defendant Jean allegedly told

Plaintiff that she knew how to do her job, and did not render aid to Plaintiff during the OG spray incident or tell Hollett about his condition.  *See id*.

Plaintiff claims the spray caused him to choke, throw up, and pass out until the next morning.  *See* SAC at 3-4.  Plaintiff also coughed once he woke up, and no one "decontaminated" the cell where the gas had been sprayed.  *See id.* at 4.  The next morning, Plaintiff complained to a Physician's Assistant, who in turn informed a "lieutenant," and Plaintiff was brought to Medical.  At Medical, a MCC employee provided Plaintiff with two albuterol and ipratropium "treatments," and placed Plaintiff on a prednisone dose.  *See id.*

### C.  Plaintiff's Alleged Attempts to Seek Legal Advice in Connection with the EDNY Action (Claims Five and Six; Defendants Owen, Reid Bork, and Tatum)

Plaintiff allegedly sought legal advice from certain lawyers and their staff regarding the EDNY action while housed at MCC.  *See* SAC at 5.  Plaintiff alleges that: (1) defendants Reid, Owen, Bork, and Tatum deprived him of legal calls; (2) unidentified MCC staff caused Plaintiff's legal mail to be delayed; (3) Owen and Bork photocopied Plaintiff's legal mailings and provided copies to defendants' counsel in the EDNY Action; (4) Owen monitored Plaintiff's calls and provided information to Tatum and defendants' counsel in the EDNY Action; (5) Owen and Bork limited the attorneys Plaintiff was permitted to call, and "prevented Plaintiff from hiring several attorneys"; and (6) unidentified MCC staff kept Plaintiff's legal visitors waiting for hours and denied legal visits.  *See id.* at 5-7.  As a result of these alleged acts, Plaintiff was prevented from filing a motion for summary judgment in the EDNY Action, from filing a complaint concerning his conditions of confinement at MCC, and from amending a habeas petition.  *See id.* at 7.

### D.  Alleged Sexual Harassment and False "Incident Report" Allegations (Claims One and Seven; Defendants St. John and Reid)

On unidentified dates, defendant St. John allegedly accused Plaintiff of being a "faggot," and pressed his lips to Plaintiff's cell window in a "kissing manner."  *See* SAC at 7-8.  Defendant St. John also allegedly watched Plaintiff undress and urinate, and commented on Plaintiff's genitalia.  *See id.* at 8.  When Plaintiff filed administrative complaints about these acts, defendant John allegedly "retaliated" on the same day by creating an "Incident Report" that charged Plaintiff with failing to stand when a prisoner count was being conducted.  *See id.* at 8.  A Disciplinary Hearing Officer found Plaintiff guilty, and defendant Reid imposed a sanction of loss of commissary for 90 days.  *See id.* at 8-9.  According to Plaintiff, this sanction was disproportionate to those imposed on other inmates for similar misconduct.  *See id.* at 9.  Plaintiff successfully appealed the sanction.  *See id*.  Separately, defendant Mobley allegedly told that Plaintiff that he had a "right" to see Plaintiff's body, and that he was "getting off" on Plaintiff, and made other unidentified "humiliating" comments.  *See id.* at 2.

### E. Plaintiff's Claims

The SAC asserts Eighth Amendment and FTCA claims for excessive force.  *See* SAC at 1.  Construing the SAC liberally, Plaintiff also asserts First and Fifth Amendment claims against the Individual Defendants.  The Court held an initial pretrial conference in this action on July 31, 2018.  At that conference, Defendants' counsel noted that the United States is the only proper defendant in an FTCA action.  The Court agreed that the government should construe Plaintiff's complaint liberally to assert FTCA claims against the United States, and the government has done so here.  Plaintiff also clarified at the conference that he only asserts FTCA claims relating to the alleged denial of recreation (Claim Two) and against defendant Jean (Claim Four).

## ARGUMENT

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S FTCA CLAIMS

### A. Legal Standards Governing Dismissal Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted).  In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court may consider evidence outside the pleadings.  *United States v. Vaszquez*, 145 F.3d 74, 80 (2d Cir. 1998).

### B. Plaintiff Failed to Properly Present and Exhaust His FTCA Claims

Plaintiff's FTCA claims either were not presented to the Federal Bureau of Prisons ("BOP") or are untimely.  Tort claims under the FTCA are barred unless they are "presented in writing to the appropriate Federal agency within two years after such claim accrues," or unless the action is begun within six months of a notice of final denial of the tort claim by the agency. 28 U.S.C. § 2401(b).  The presentment requirement is jurisdictional.  *See McIntosh v. United States*, No. 14-cv-7889, 2016 WL 1274585 (KLK), at *10 (S.D.N.Y. Mar. 31, 2016) (citations omitted). The FTCA's exhaustion procedures "must be adhered to strictly, and failure to comply

will result in dismissal of the complaint."  *Connors v. Heywright*, No. 02-cv- 9988 (DC), 2003

WL 21087886, at *4 (S.D.N.Y. May 12, 2003) (internal citation omitted).[2]

   To fulfill the FTCA's presentment and exhaustion requirements, a claimant must provide

a federal agency with "an executed Standard Form 95 or other written notification of an incident,

accompanied by a claim for money damages in a sum certain for injury to or loss of property,

personal injury, or death alleged to have occurred by reason of the incident."  28 C.F.R. § 14.2.[3]

Plaintiff has not alleged in the SAC that he has filed an administrative tort claim with the BOP

with regard to his allegations in this case, and his FTCA claims should be dismissed on that basis

alone.  *See Thomas v. Metro. Correction Ctr.*, No. 09-cv-1769 (PGG), 2010 WL 2507041, at *6

(S.D.N.Y. June 21, 2010) ("[B]ecause Plaintiff has failed to plead and prove compliance with the

statutory requirements of administrative exhaustion, his FTCA claims must be dismissed")

(quotation and citation omitted).  BOP has two records of administrative tort claims filed by

Plaintiff that relate to when he was housed at MCC, and neither cures these defects.  The first

administrative tort claim alleged an improper denial of recreation, and was received by BOP on

October 17, 2016.  Declaration of Joy Aassiddaa ¶ 46 ("Aassiddaa Decl.").  By letter dated

October 31, 2016, BOP denied this administrative tort claim.  *See id.*  Plaintiff, however, did not

---

[2] To the extent that Plaintiff asserts any FTCA claims against the Individual Defendants in either their individual or official capacities, those claims must also be dismissed because the United States is the only proper defendant in an FTCA action.  *See Point-Dujour v. U.S. Postal Serv.*, No. 02-cv-6840 (JCF), 2003 WL 1745290, at *3 n. 5 (S.D.N.Y. Mar. 31, 2003) (observing that the United States has not waived sovereign immunity for federal agencies or employees acting within the scope of their employment).

[3] The exhaustion procedures for FTCA claims and *Bivens* claims pursuant to the Prison Litigation Reform Act ("PLRA") are separate, and "the fulfillment of one does not constitute satisfaction of the other." *Owusu v. Fed. Bureau of Prisons*, No. 02 Civ. 0915 (NRB), 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003).  Thus, even if Plaintiff had exhausted his administrative remedies under the PLRA as to his *Bivens* claims, he was separately required to file an administrative tort claim with the BOP for his FTCA claims. *See Ward v. Ives*, No. 11-cv-2014 WL 4417764, at *6 (E.D. Cal. Sept. 4, 2014) ("Prison grievances are not sufficient to exhaust administrative remedies under the FTCA because 'exhaustion requirements for administrative remedies through the BOP's inmate grievance system differ from the exhaustion requirements for filing a claim under the FTCA.'"), *report and recommendation adopted*, 2014 WL 4929454 (E.D. Cal. Sept. 30, 2014).

commence this action until July 19, 2017, well beyond the six months permitted under the FTCA following notice of final denial.  *See* 28 U.S.C. § 2401(b).[4]  The second administrative tort claim relates to the alleged OC gas incident, and was received by the BOP on May 29, 2018, after Plaintiff filed his complaint in this case.  *See* Aassiddaa Decl. ¶ 47.  But the FTCA states that "[a]n action shall not be *instituted* upon a claim against the United States . . . unless the claimant shall have *first* presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."  28 U.S.C. § 2675(a) (emphasis added).  The Supreme Court has squarely held that a plaintiff's failure to exhaust administrative remedies before filing a lawsuit cannot be cured by presenting a claim during the pendency of the suit. *See McNeil v. United States*, 508 U.S. 106, 110-13 (1993).  BOP has no other records relating to any administrative tort claims filed by Plaintiff relating to when he was housed at MCC.  *See* Aassiddaa Decl. ¶ 49.  The Court thus lacks subject matter jurisdiction over the FTCA claims.

## II. DEFENDANT JEAN IS ENTITLED TO ABSOLUTE IMMUNITY

The claims against defendant Jean should also be dismissed for lack of subject matter jurisdiction.  She has absolute immunity from suit because, at all times relevant to the SAC, she was a Commissioned Officer in the Public Health Service ("PHS").  *See* Declaration of Nadina Jean ¶¶ 1, 3.  The Public Health Service Act, 42 U.S.C.§ 233(a), makes the FTCA the exclusive remedy for specified actions against members of the PHS arising out of conduct within the scope of their employment.  Section 233(a) grants absolute immunity from suit to any PHS official who is performing, "medical, surgical, dental, or related functions . . . while acting within the scope of

---

[4] Although this statute of limitations is not jurisdictional and may be equitably tolled in rare and exceptional circumstances, *see United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), Plaintiff has failed to allege any circumstances justifying such equitable tolling.  Thus, even if Plaintiff pled the necessary presentment of this administrative tort claim, the claim would be subject to dismissal pursuant to Rule 12(b)(6) or upon conversion to a motion for summary judgment under Rule 12(d).  *See Lipscomb v. United States*, No. 16-cv-7963 (NSR), 2017 WL 3835693, at *2 (S.D.N.Y. Aug. 31, 2017) (dismissing FTCA claims at motion to dismiss stage as untimely because plaintiff "failed to allege any circumstances justifying the application of equitable tolling to his late FTCA claims.").

his office or employment." *Id.*  This absolute immunity extends to *Bivens* actions filed against members of the PHS.  *See Hui v. Castaneda*, 559 U.S. 799, 807 (2010).  Here, Plaintiff complains only of defendant Jean's failure to provide him with medical care.  *See* SAC at 3-4.  All claims against defendant Jean should thus be dismissed.

## II. PLAINTIFF FAILS TO STATE A *BIVENS* CLAIM AGAINST ANY OF THE INDIVIDUAL DEFENDANTS

### A.  Legal Standards for a Rule 12(b)(6) Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The claims alleged must be plausible; "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678; *see also Twombly*, 550 U.S. at 555 (simply offering "labels and conclusions . . . will not do").

In a case brought by a *pro se* plaintiff, the Court must construe the complaint "liberally" and interpret it "to raise the strongest arguments that [it] suggest[s]."  *Martinez v. Aycock-West.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)) (quotation omitted).  But "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Id.* (quotation omitted) (citing *Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008)).

**B.  No *Bivens* Remedy Is Available for Plaintiffs' Retaliation, Conditions of Confinement, Excessive Force, or Deprivation of Access to Courts Claims (Claims One, Two, Three, Five, Six, and Seven; Defendants Tatum, Bork, Owen, Reid, Hollett, Mobley, and St. John)**

Plaintiff's claims for alleged retaliation (First and Fifth Amendment), conditions of confinement (Eighth Amendment), excessive force (Eighth Amendment), deprivation of access to the courts (First Amendment and Fifth Amendment), and sexual harassment (Eighth Amendment) fail for a lack of an available *Bivens* remedy.  A "*Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts."  *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc).  The Supreme Court recently and forcefully reiterated that "[e]xpanding the *Bivens* remedy is now a disfavored judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (internal quotation marks omitted).  In considering whether a *Bivens* remedy is available under the test set forth in *Abbasi*, courts must first determine whether a "case presents a new *Bivens* context," meaning that it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  *Id.* at 1859.  A "new context" is readily established, as "even a modest extension" of an existing *Bivens* remedy "is still an extension" that can present a new context for *Bivens* purposes.  *Id.* at 1864.  If the case presents a new *Bivens* context, then the court must evaluate whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Id.* at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 19 (1980)).  This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857-58.  Among other things, the *Abbasi* Court instructed that: "if there is an alternative remedial structure present in a certain case, that alone

10

may limit the power of the Judiciary to infer a new *Bivens* cause of action.  For if Congress has

created 'any alternative, existing process for protecting the injured party's interest,' that itself

may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new

and freestanding remedy in damages.'"  *Id*. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537,

550 (2007)) (internal brackets omitted).  The "'counsels hesitation'" threshold "is remarkably

low.  It is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction."

*Arar*, 585 F.3d at 574.  "Hesitation is a pause, not a full stop, or an abstention; and to counsel is

not to require.  'Hesitation' is 'counseled' whenever thoughtful discretion would pause."  *Id.*

 Under the first part of the analysis mandated by *Abbasi*, Plaintiff's excessive force,

sexual harassment, conditions of confinement, and deprivation of access to courts claims present

a new *Bivens* context.  As the *Abbasi* Court noted, 137 S. Ct. at 1854-55, the Supreme Court has

recognized a *Bivens* remedy only three times involving: (1) a person "injured by federal officers

who violated the [Fourth Amendment's prohibition against unreasonable search and seizure"

*Bivens*, 403 U.S. at 389; (2) a Fifth Amendment equal protection claim where "an administrative

assistant sued a Congressman for firing her because she was a woman," *Davis v. Passman*, 442

U.S. 228, 230 (1979); and; (3) Eighth Amendment claims asserted by the estate of a deceased

prisoner against prison officials who allegedly were "deliberately indifferent to [the prisoner's]

serious medical needs," causing his death, *Carlson*, 446 U.S. at 16.  137 S. Ct. at 1854-55.  The

Court has never recognized a *Bivens* remedy for a claim arising from alleged excessive force,

sexual harassment, conditions of confinement, or deprivation of access to courts.

 Under the second step of the analysis, "special factors" exist that counsel against

expanding a new *Bivens* remedy to these contests.  In particular, Plaintiff has access to

alternative and existing processes, such as an official-capacity claim seeking injunctive relief.

*See Abbasi*, 137 S.Ct. at 1865 ("[A]lternative remedies" could include an "injunction requiring the warden to bring his prison into compliance . . . ," or "some other form of equitable relief."); 5 U.S.C. § 706 (under APA, courts may "hold unlawful and set aside agency action" that is allegedly "contrary to [any] constitutional right, power, privilege, or immunity").  Plaintiff may also pursue a claim under the FTCA for any injuries that he has sustained as a result of negligence or assault and battery.  *See* 28 U.S.C. §§ 1346 and 2671 *et seq.*[5]  There are other "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," *Abbasi*, 137 S. Ct. at 1858, including that "Congress has been active in the area of prisoners' rights and its actions do not support the creation of a new *Bivens* claim" beyond those already recognized.  *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 59 (E.D.N.Y. 2017) (finding no *Bivens* remedy for "a Fifth Amendment due process claim relating to the alleged failure by prison employees to conduct 'meaningful' reviews of a plaintiff's placement in the SHU").  Courts are also "ill equipped to deal with the increasingly urgent problems of prison administration and reform."  *Ford v. Fischer*, 539 F. App'x 19 (2d Cir. 2013) (quotation and citation omitted).

Post-*Abbasi* courts have declined to recognize a *Bivens* remedy for the claims presented by Plaintiff.  For example, "district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for a violation of the First Amendment."  *Free v. Peikar*, No. 17-cv-00159, 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018) (collecting district court cases nationwide).  One court in this District has concluded that there is no *Bivens* remedy available for an excessive force claim after *Abbasi*.  *See Abdoulaye*, 2018 WL 1890488, at *6-7.

---

[5] To the extent *Carlson* described the FTCA as a "parallel" and "complementary" remedy to a *Bivens* action, and not a substitute, *see* 446 U.S. at 20, that language has now been called into question by *Abbasi*, which not only unambiguously pronounced that an alternative remedy precludes a *Bivens* action, but also emphasized the "changes to the [Supreme] Court's general approach" to implied constitutional remedies.  *Abbasi*, 137 S. Ct. at 1856-57, 1863. The Court expressly acknowledged that the analysis in *Carlson* "might have been different if [it] were decided today."  *Id.* at 1856; *see also Abdoulaye v. Cimaglia*, 15-cv-4921 (PKC), 2018 WL 1890488, at *7 (S.D.N.Y. Mar. 3, 2018) (recognizing the FTCA as an available alternative remedy that counsels hesitation post-*Abbasi*).

*Bivens* claims for denial of access to courts claims have also been rejected.  *See Winstead v. Matevousian*, No. 17-cv-0095, 2018 WL 2021040, at *3 (E.D. Cal. May 1, 2018) (dismissing claim that federal employees thwarted plaintiff's access to the courts), *report and recommendation adopted*, 2018 WL 3357437 (E.D. Cal. July 9, 2018).  And in *Abbasi* itself, the Supreme Court rejected a *Bivens* remedy for alleged unconstitutional conditions of confinement in large part because of the availability of alternative remedies.  *See* 137 S. Ct. at 1862.  Moreover, as sexual harassment of the sort alleged by Plaintiff does not give rise to a constitutional violation (*see infra* at Section III.F), there can be no *Bivens* remedy for such a claim.  The Court should thus decline to recognize a *Bivens* remedy for any of these claims.

### C.   Plaintiff Fails to State a Conditions of Confinement Claim Relating to His Cell Conditions and Denial of Recreation (Claims One, Two, and Five; Defendants Mobley, Tatum, Reid, Bork, and Owen)

Because Plaintiff is a convicted prisoner, his conditions of confinement claim arises under the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017).  An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 32 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  But the SAC is devoid of any allegations that any of the Individual Defendants were specifically responsible for the alleged conditions, had specific knowledge of them, or denied any of Plaintiff's requests for recreation.  "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  And although Plaintiff suggests that he discussed the

issue of the lights in his cell with defendant Tatum, MCC's warden, *see* SAC at 2, the mere

"receipt of complaints" is insufficient to impute personal involvement.  *Manswell v. United*

*States*, No. 9-cv-04102 (RJH), 2010 WL 3219156, at *5 (S.D.N.Y. Aug. 12, 2010) (dismissing

claims against MCC warden where plaintiff alleged that she and other inmates complained to the

warden about certain conditions).  Plaintiff's conclusory allegations that defendants Reid, Owen,

Bork "conspired" to keep him in 10 South Lower are "'naked assertion[s] devoid of 'further

factual enhancement'" that cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557).  Nor do the alleged statements by defendant Reid or Tatum, *see* SAC

at 2, plausibly allege their knowledge about the conditions in Plaintiff's MCC cell.  Plaintiff thus

fails to state a conditions of confinement claim.

### D.  Plaintiff Fails to State an Interference with Access to Courts Claim (Claims Five and Six; Defendants Reid, Owen, Bork, and Tatum)

Construing the SAC liberally, Plaintiff asserts First and Fifth Amendment claims against

defendants Reid, Owen, Bork, and Tatum for interfering with his access to the courts.  To state a

claim for denial of access to courts, a plaintiff must allege that the defendant "took or was

responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim."  *Davis v.*

*Goord*, 320 F.3d 346, 351 (2d Cir. 2003).  "Courts in this district have held that a plaintiff is

required to demonstrate actual injury and specify which legal matter Defendants' alleged

tampering hindered him from pursuing."  *Corley v. City of New York*, No. 14-cv-3202 (GHW),

2017 WL 4357662, at *8 (S.D.N.Y. Sept. 28, 2017) (citation and quotation omitted).  But

Plaintiff does not plead any actual injury as a result of the alleged interference.  He does not

allege, for example, that the interference caused dismissal of a meritorious claim or that he was

otherwise unable to vindicate his legal rights.  *See Cancel v. Goord,* No. 00-cv-2042, 2001 WL

303713, at *4 (S.D.N.Y. Mar. 29, 2001) ([A] plaintiff must allege . . .  that the defendant's

14

actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim" (internal citation omitted)). And although Plaintiff claims he was unable to submit certain filings in court, *see* SAC at 7, Plaintiff fails to allege that he suffered any corresponding legal prejudice. For example, Plaintiff does not allege that his EDNY action was dismissed as a result of his inability to file a motion for summary judgment, or that he has been unable to challenge his conditions of confinement at MCC. These claims thus fail. Moreover, Plaintiffs' claims relating to a denial or delay of legal visits/legal mail must also be dismissed on the additional basis that Plaintiff does not allege any personal involvement by the Individual Defendants with respect to those claims. *See Ganek v. Leibowitz*, 874 F.3d 73, 92 (2d Cir. 2017).

### E. Plaintiff Fails to State a Deliberate Indifference or Excessive Force Claim Against Mobley, Hollet, or Jean (Claims Three and Four)

Plaintiff's excessive force and deliberate indifference (to conditions of confinement and to medical needs) claims against Mobley and Hollet arise under the Eighth Amendment, as does Plaintiff's deliberate indifference to medical needs claim against defendant Jean. *See Darnell*, 849 F.3d at 35 (2d Cir. 2017) (Eighth Amendment right arises from the right to "be from cruel and unusual punishments" and conditions of confinement may amount to a form of punishment); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) (Eighth Amendment prohibits "unnecessary and wanton infliction of pain") (citation and internal quotation omitted). A claim for deliberate indifference has objective and subjective prongs. Under the objective element for a deliberate indifference to conditions of confinement claim, "[t]he plaintiff must allege facts showing he was denied the minimal civilized measure of life's necessities." *Vargas v. New York City Dep't of Corr.*, No. 17-cv-2544 (JGK), 2018 WL 3392873, at *3 (S.D.N.Y. July 12, 2018). Under the subjective element for such a claim, the inmate must show that that the defendant possessed a

"sufficiently culpable state of mind." *Howard* v. *Brown*, No. 15-cv-9930 (ER), 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citation and quotation omitted).

Plaintiff fails to plead the objective prong for deliberate indifference to conditions of confinement with respect to the OC incident. The conditions here—being temporarily exposed to OC gas and receiving medical care the next day—do not state the necessary severity for a constitutional violation. *See Stevens v. City of New York*, No. 10-cv-5455 (PGG), 2011 WL 3251501, at *4 (S.D.N.Y. July 22, 2011) (holding that temporary exposure to cold weather was not a constitutional violation); *cf. Darnell v. Pineiro*, 849 F.3d 17, 23 (2d Cir. 2017) (reversing grant of motion for summary judgment where conditions of confinement included overcrowding, unusable toilets, and infestation). And even assuming that Plaintiff pleaded the objective prong, he fails to plead the subjective element as to Mobley and Hollett. Plaintiff does not allege that Mobley or Hollett sprayed him with OC gas or pepper spray, or that their use of the spray against another prisoner was unjustified. *See* SAC at 3-4. And Plaintiff concedes that, after he began yelling that he was having trouble breathing, defendant Mobley directed two officers to manually hold Plaintiff's window flap closed, and that it was the vents that caused the gas to blow into the cell. *See id.* at 3. Because Plaintiff does not allege that Mobley or Hollett knew that the prison vent system could transport the gas to Plaintiff's cell, the claims at most sound in negligence, and cannot establish the necessary awareness of an unreasonable risk. S*ee Vargas*, 2018 WL 3392873, at *2-4 (dismissing deliberate indifference claims where defendant intended to spray other inmates with pepper spray but plaintiff also got sprayed).

Under the objective element for a medical needs claim, "the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citation and internal quotation marks omitted). This standard contemplates "a condition of

urgency, one that may produce death, degeneration, or extreme pain." *Id.* (citation and internal quotation marks omitted).   Plaintiff fails to plead the objective prong with respect to his medical care claim, even assuming he pled the subjective prong.   Courts within this Circuit have held that "the temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' injury." *Lewis v. Clarkstown Police Dep't*, No. 11-cv-2487 (ER), 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014).   Although Plaintiff alleges that he has asthma and notified defendant Jean of this condition, courts distinguish the mere "existence of the condition [of asthma] . . . from the situation in which an inmate is suffering an actual attack." *Patterson v. Lilley,* No. 02-cv-6056 (NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003).   Plaintiff does not allege that he suffered an attack, and acknowledges that he received medical care the next day.   *See* SAC at 4.   The Second Circuit has also limited delay-in-medical-care claims to "cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." *Demata v. N.Y. State Corr. Dep't of Health Servs.,* 198 F.3d 233 (2d Cir. 1999) (unpublished) (citations omitted).   The alleged delay in this case was only one night. Plaintiff also does not allege that the conditions here were life-threatening, fast-degenerating, or that the delay caused his conditions to degenerate in any material way, or that anyone subsequently interfered in his subsequent request for care.   *See* SAC at 3-4.

An excessive force claim also has objective and subjective prongs.   "The subjective component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Sims*, 230 F.3d at 21.[6]   Thus, even if

---

[6] To the extent Plaintiff asserts an excessive force claim against defendant Jean, it must be dismissed for lack of personal involvement—Plaintiff does not allege that defendant Jean was involved in any application of force.

Plaintiff pled the objective prong, because Mobley directed that the window flap be closed and

no one intended to spray Plaintiff, the SAC does not allege that Mobley and Hollett acted with

the necessary wantonness.  *See Vargas*, 2018 WL 3392873, at *4 (dismissing excessive force

claim where officer intended to use pepper spray on other inmates and his actions were therefore

at most negligent.).  Plaintiff thus fails to state an excessive force claim.

### F.  Plaintiff's Sexual Harassment Allegations Fail to State a Constitutional Claim (Claims One and Six; Defendants Mobley and St. John)

Construing Plaintiff's complaint liberally, Plaintiff asserts Eighth Amendment claims

against defendants Mobley and St. John for allegedly making inappropriate sexual comments and

gestures and "leering."  SAC at 1-2; 7-8.  But "[s]everal district courts have considered the issue,

and have held that verbal sexual harassment of a prisoner, without physical contact, does not

violate the Eighth Amendment."  *Jones v. Harris,* 665 F.Supp.2d 384, 396 (S.D.N.Y. 2009)

(collecting cases).  The Second Circuit has also held that a small number of incidents in which a

plaintiff was verbally "harassed, touched, and pressed against," does not involve a "harm of

federal constitutional proportions."  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).

Plaintiff does not allege touching or pressing, and thus fails to state any constitutional claim for

alleged sexual harassment.

### G.  Defendants Are Protected by Qualified Immunity

Plaintiff's claims for the additional reason that these defendants are qualifiedly immune

from suit.  The doctrine of qualified immunity "entitles public officials to freedom from suit for

acts undertaken in their official capacity if (1) their conduct does not violate clearly established

constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not

violate those rights."  *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000) (citations and

internal quotation marks omitted).  For the reasons discussed above, the allegations in the SAC

do not establish the violation of any clearly established constitutional right. *See supra* Part II, A-F.  Therefore, the Defendants are entitled to qualified immunity. *See, e.g.*, *Williams v. Fisher*, No. 02-cv-4558 (LMM), 2003 WL 22170610, at *11 (S.D.N.Y. Sept. 18, 2003) (on a motion to dismiss, a qualified immunity defense will prevail "if the complaint fails to allege the violation of a clearly established constitutional right").

## III. PLAINTFF FAILED TO EXHAUST MANY OF HIS *BIVENS* CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

The following *Bivens* claims should be dismissed for failure to exhaust administrative remedies under the PLRA: (1) that Plaintiff was improperly housed in 10 South Lower; (2) conditions of confinement relating to Plaintiff's cell (other than not having a shower curtain and the camera angle); (3) denial of recreation; (4) denial of access to the courts (other than denial of an alleged paralegal as a legal visitor, a request for an unlimited number of legally privileged telephone calls, and a request for privileged legal calls with an alleged paralegal); and (5) sexual harassment as to defendant St. John.

### A.  Legal Standards for PLRA Exhaustion and Summary Judgment

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title [42], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to "federal prisoners suing under *Bivens*," and encompasses "all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  The PLRA requires "proper exhaustion," that is, "use of "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted).

An inmate in BOP custody may exhaust administrative remedies through a four-step process. *See generally* 28 C.F.R. Part 542; *see also Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007). An inmate shall: (1) first attempt informal resolution of his complaint by presenting the issue informally using a "BP-8" form: (2) second, submit a formal written Administrative Remedy Request to the Warden on a "BP-9" form; (3) third, submit an appeal on a "BP-10" form to the appropriate Regional Director of BOP; (4) fourth, appeal a negative decision from the Regional Director by submitting a form "BP-11" to the BOP General Counsel's office. *See* 28 C.F.R. §§ 542.13-15; Aassiddaa Decl. ¶ 6-10; *Banks v. United States*, No. 10-cv-6613 (GBD) (GWG), 2011 WL 4100454, at *10 (S.D.N.Y. Sept. 15, 2011), *report and recommendation adopted*, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011).

A complaint may be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies "[i]f nonexhaustion is clear from the face of the complaint." *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003). If not, "a defendant's motion to dismiss should be converted to one for summary judgment . . . for the narrow purpose of determining whether the plaintiff exhausted his administrative remedies." *Page v. Breslin,* No. 02-cv-6030 (SJF)(LB), 2004 WL 2713266, at *2 (E.D.N.Y. Nov. 29, 2004). A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quotation and citations omitted). "In assessing the record to determine whether there is a genuine issue to be tried, [the Court is] required to resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (citation omitted).  "The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  Where that burden is carried, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

### B.  Plaintiff Did Not Properly Exhaust the Four-Step PLRA Process For Many of His Claims

Plaintiff has filed ten requests for administrative remedies (i.e, BP-9s) under the Administrative Remedy Program relating to when he was housed at MCC.  Aassiddaa Decl. ¶ 12.  None of those BP-9s mention facts relating to his claims that BOP employees: (1) "scared" attorneys into not working with Plaintiff: (2) caused long wait times for Plaintiff's legal visitors; or (3) deprived Plaintiff of access to legal resources such as case law or motions.  *Id.* ¶ 12.  Nor does any BP-9 allege that Officer St. John ever sexually harassed Plaintiff.  *Id.*  And Plaintiff never filed a BP-11 for his claims that he was denied recreation, wrongfully housed in 10 South Lower by any of the Individual Defendants, or for his claims based on his cell conditions (other than not having a shower curtain and the alleged angle of the camera).  *Id.* ¶ 13.  Plaintiff thus failed to exhaust these claims under the PLRA.  That Plaintiff exhausted some claims does not excuse his failure to exhaust others—a plaintiff who has exhausted his administrative remedies under the PLRA as to certain allegations may not subsequently introduce new allegations in his *Bivens* suit.  *See Petty v. Goord*, No. 00-cv-803, 2002 WL 31458240, at *4 (S.D.N.Y. Nov. 4,

2002) ("allegations in the complaint that were not mentioned in [an inmate's] grievance are barred by section 1997e(a)").

There may be an exception to the PLRA's exhaustion requirement when: (1) officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Correction Officer Priatno,* 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross v. Blake*, 136 S. Ct. 1850 (2016)).  None of these exceptions apply here: Plaintiff successfully filed and received responses to numerous administrative grievances, *see* Aassiddaa Decl. ¶ 13-42, and the ARP sets forth unambiguous instructions on how to exhaust grievances, *see* 28 C.F.R. §§ 542.10-19.

## III. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT OWEN

Plaintiff has the burden of showing that the court has personal jurisdiction over each defendant.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). "[P]ersonal jurisdiction is determined in accordance with the law of the forum in which the federal court sits." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 512 (S.D.N.Y. 2016).  New York law allows for personal jurisdiction where a party is either domiciled in New York (general jurisdiction) or is subject to New York's long-arm statute (specific jurisdiction).  *Id*.  The long-arm statute, C.P.L.R. Section 302, grants personal jurisdiction over a non-resident who:  (1) transacts business in New York or contracts to supply goods or services in New York; (2) commits a tortious act in New York; (3) commits a tortious act outside New York causing injury to a person in New York, if the non-resident "(i) regularly does or solicits business, or engages in any other persistent course of conduct" in New York, or "(ii) expects or should reasonably

expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; or (4) has real property in New York.  *See* N.Y. C.P.L.R. § 302(a)(1)-(4); *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

Plaintiff fails to allege that defendant Owen meets any of these requirements.  An allegation that defendant Owen caused an injury in New York does not satisfy the long-arm statute, as Plaintiff has not alleged that defendant Owen "transacts any business within the state or contracts anywhere to supply goods or services in the state," nor does Plaintiff claim against defendant Owen arose from business activity.  *See* C.P.L.R. Section 302(a)(1).  As a result, this Court lacks personal jurisdiction over defendant Owen.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC in its entirety.


Dated: August 10, 2018
      New York, New York

                                  Respectfully submitted,

                                  GEOFFREY S. BERMAN
                                  United States Attorney for the
                                  Southern District of New York
                                  *Counsel for Defendants*

             By:     /s/ Charles S. Jacob
                                  CHARLES S. JACOB
                                  Assistant United States Attorney
                                  86 Chambers Street, Third Floor
                                  New York, New York 10007
                                  (212) 637-2725
                                  charles.jacob@usdoj.gov