

U.S. Department of Justice

United States Attorney
Southern District of New York

*86 Chambers Street*
*New York, New York 10007*

July 18, 2022

**VIA ECF**
The Honorable Andrew L. Carter, Jr.
United States District Judge
United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Hill v. Tatum, et al.*, 17 Civ. 4070 (ALC) (OTW)

Dear Judge Carter:

  This Office represents the individual current and former federal employees (the "Federal Defendants") and the United States of America in the above-referenced action. We write to notify the Court of the Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (U.S. June 8, 2022). *Egbert* further supports the Federal Defendants' motion to dismiss the Second Amended Complaint, Dkt. No. 23, which is presently *sub judice*.

  Specifically, the Federal Defendants' motion papers articulated why there is no *Bivens* remedy available for Plaintiff's retaliation, conditions of confinement, excessive force, sexual harassment, or deprivation of access to courts claims (Claims One, Two, Three, Five, Six, and Seven; Defendants Tatum, Bork, Owen, Reid, Hollett, Mobley, and St. John). *See* Dkt. No. 24, Fed. Def. Op. Br., at 10-14; Dkt. No. 68, Fed. Def. Reply Br. at 4-5. In *Egbert*, the Supreme Court has now explicitly held that that "there is no *Bivens* action for First Amendment retaliation." 142 S. Ct. at 1807. *Egbert* thus explicitly bars any retaliation claim by Plaintiff against any Federal Defendants.

  Further, in *Egbert*, the Supreme Court also held that a claim for excessive force is not available against federal border agents. *Id.* at 1802-09. In doing so, the Supreme Court clarified that the "two step[]" test set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), *see also* Dkt. No. 24 at 10-14 (summarizing the two-part *Abbasi* test), "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1798. The Supreme Court instructed that the answer to that question "in most every case" should lead to the same result: "no Bivens action may lie." *Id.* at 1803. So long as there is "any rational reason (even one)" to defer to Congress's judgment, *id.* at 1805, "a court may not recognize a Bivens remedy," *id.* The Supreme Court further explained that a district court "cannot" recognize a Bivens remedy where there is even the "potential" that "judicial intrusion into a given field might be harmful or inappropriate." *Id.* at *6 (cleaned up). The "uncertainty alone" of the "consequences" of any new Bivens claim "is a special factor that forecloses relief." *Id.* at 1804. Further, courts "may not fashion a Bivens remedy if Congress has already provided, or has authorized the Executive to provide, an alternative remedial structure." *Id.* (cleaned up). In short, the Supreme Court made it "clear" in *Egbert* that a Bivens remedy should not be extended "in all but the most unusual circumstances." *Id.*

*Egbert*'s reasoning applies here with full force, and forecloses Plaintiff's conditions of confinement, excessive force, sexual harassment, and deprivation of access to courts claims against any of the Federal Defendants. The Supreme Court has never recognized any *Bivens* cause of action for any of these claims, as stated by Plaintiff, in the context of prison administration. And, as with federal border agents, there is plainly a rational reason to think that Congress is better suited than the courts to authorize a damages action against federal prison officials in contexts such as these. For one, there is the undesirability of excessive judicial intervention into prison administration, as "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Further, the operation of correctional facilities presents a plethora of policy-related considerations that would require the Court to balance the challenges prison administrators and officers face in maintaining prison security against the expansion of private rights of action for damages. In *Egbert*, the Supreme Court also cited the ability of federal prisoners to file grievances through BOP's Administrative Remedy Program as the precise kind of alternative remedy that may "independently foreclose[]" a Bivens claim. 142 S. Ct. at 1806. Thus, for all of these reasons, and for those stated in Defendant's moving papers, no *Bivens* remedy is available for Plaintiff's retaliation, conditions of confinement, excessive force, sexual harassment, or deprivation of access to courts claims.[1]

We thank the Court for its consideration of this matter.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

By: /s/ Charles S. Jacob
CHARLES S. JACOB
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, NY 10007
Tel: (212) 637-2725
Fax: (212) 637-2702
charles.jacob@usdoj.gov

cc: *Pro se* Plaintiff (via U.S. mail, and enclosing a copy of the Supreme Court's decision in *Egbert*)[2]

---

[1] The Federal Defendants, in their motion to dismiss papers, did not argue that a *Bivens* remedy was unavailable for Plaintiff's deliberate indifference to medical needs claims against certain of the Federal Defendants. *See* Dkt. No. 68 at 5 n. 4. For the reasons set forth in Defendant's moving papers, however, Plaintiff failed to state any such claim. In the event that any such claims proceed beyond the Federal Defendants' motion to dismiss, the Federal Defendants reserve the right, in light of *Egbert*, to seek the dismissal of such claims on the grounds that no *Bivens* remedy is available.

[2] This Office understands that Plaintiff has been released from BOP custody, and is thus mailing a copy of this letter to the address on file possessed by BOP. The docket does not presently reflect that Plaintiff has notified the Court or parties of a new address for himself.