UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMETRIUS HILL,

                          Plaintiff,

-against-

ESKER L. TATUM, et al.,

                          Defendants.

1:17-cv-04070 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Demetrius Hill ("Hill" or "Plaintiff"), proceeding *pro se*, brings this federal civil rights action against the United States of America and eight prison officials previously employed at the Metropolitan Correctional Center, alleging tortious conduct and constitutional violations he experienced while detained there. He names as individual defendants Metropolitan Correctional Center Warden Esker L. Tatum, Staff Attorneys Les Owens and Kenneth Bork, Unit Manager Norman Reid, Senior Correctional Officer Kyle St. John, Correctional Systems Officer Johnny Mobley, Lieutenant Jordan Hollett ("Defendant Officers"), and Nadina Jean, a Commissioned Officer in the Public Health Service (with Defendant Officers, "Individual Defendants," and together with the United States, "Defendants"). The Government filed a motion to dismiss several of Plaintiff's claims. For the reasons discussed below, the motion to dismiss is **GRANTED**.

BACKGROUND

**I.    Factual History**

Hill was incarcerated at the Metropolitan Correctional Center ("MCC") in New York, New York from June 2016 to October 2016. *See* ECF No. 15 at 1 ("Second Amended Complaint" or "SAC"). Hill was originally serving his sentence at the Federal Correctional Institute, Lewisburg

("Lewisburg"). *See id.* at 4. He was transferred to the MCC on a federal writ so that he could participate in a civil lawsuit in the Eastern District of New York. *See id.* at 1.

While at the MCC, Plaintiff was placed in the special housing unit, or "SHU." *Id.* Plaintiff alleges he was subjected to inhumane conditions of confinement, including an unsanitary cell, denied recreational time, and sexual harassment.

> Plaintiff was forced to sleep on a concrete slab with an exceptionally thin mattress that was torn and soaked with a stinking mildew on the inside. . . . There were 3 huge lights inside each cell that were kept on day and all night.

*Id.* at 2. Additionally, Hill alleges that two vents in his cell would blow freezing cold air nonstop and that he was denied the opportunity to buy warmer clothing from the commissary. *Id.* These conditions had a magnified impact on Hill because the Defendant Officers denied him any recreational time for his first thirty to forty-five days at the MCC. *Id.* at 3. This caused Hill to suffer migraines and insomnia, lose his appetite, and rapidly lose weight. *Id.*

Hill alleges that Defendant Mobley refused to provide him with a shower curtain and would leer and comment on the Plaintiff's body while he showered. *Id.* at 2. Defendant Mobley allegedly stated that "he had the right to see every part of the Plaintiff's body [and] [t]hat he was getting off on Plaintiff." *Id.* at 2 (internal quotation marks omitted). Defendant St. John also sexually harassed Hill, watching him undress and commenting on Hill's genitalia. *Id.* at 7–8. When Plaintiff filed several complaints about Defendant St. John's harassment, St. John retaliated against him by filing an incident report which deprived Plaintiff of his commissary privileges for ninety days. *Id.* at 8.

Hill believes that all of these conditions were deliberate and perpetrated with the intent to make him drop his civil litigation. *See id.* Defendant Tatum allegedly told Plaintiff: "You can always go back to Lewisburg, just drop your lawsuit." *Id.* And Defendant Reid said, "You brought this on yourself always filing so get use to it playa." *Id.*

Hill alleges that the Defendant Officers purposefully and intentionally blocked his access to counsel, tampered with his legal mail, and obstructed his ability to engage with the courts. *Id.* 5–7. Defendants Owens and Bork denied Hill legal visits which impeded his ability to file motions in his civil litigation and petition state and federal courts for post-conviction relief. *Id.* at 7. Additionally, Defendants Owens and Bork obstructed Plaintiff's ability to retain counsel by "assembl[ing] a list of attorneys Plaintiff was only allowed to call and prevent[ing] Plaintiff from hiring several attorneys by calling those attorneys and scaring them into not working with Plaintiff." *Id.* at 5. Defendants Owens and Bork also "had [P]laintiff[']s legal mailings photocopied" and shared them with Plaintiff's opposing party. *Id.*

Hill additionally alleges that, on September 2 or 3, 2016, the Defendant Officers sprayed two cans of "O.C. gas" or pepper spray in the cell across from his. *Id.* at 3–4. Although Hill had previously informed Defendants Jean and Hollet that he was asthmatic, Defendants Hollet and Anderson still sprayed the chemicals in his proximity. *Id.* As the gas filled his cell, Plaintiff banged on his door and asked for help. *Id.* Defendant Mobley instructed the other officers to hold closed the steel window flap on Hill's cell door and continue spraying the chemicals. *Id.* The gas was still able to enter through the ventilation, causing Hill to choke. *Id.* "[H]is nose kept running, his eyes were burning, he threw up and passed [out] only to awake coughing again and again." *Id.* The following morning, Hill still had trouble breathing and received medical treatment. *Id.* at 4. His cell was never decontaminated. *Id.*

## II. Procedural History

Plaintiff filed numerous grievances and administrative complaints regarding his treatment at the MCC both while he was incarcerated there and afterwards. *See generally* SAC. On May 31,

3

2017, Hill filed his complaint initiating this action. ECF No. 1. On October 17, 2017, Hill amended the complaint. ECF No. 6. On May 30, 2018, Hill filed the operative, second amended complaint. ECF No. 15. In this pleading, Hill brings claims for tortious conduct under the Federal Tort Claims Act ("FTCA") and violations of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*. 403 U.S. 388 (1971).

On August 10, 2018, the Government filed a motion to dismiss the second amended complaint on behalf of itself and the Individual Defendants. ECF No. 23. The Government argues that: (1) the Court lacks subject matter jurisdiction because Hill has failed to exhaust his claims, (2) the Court lacks personal jurisdiction over Defendant Owens, (3) Hill has failed to state a claim for which a *Bivens* remedy would be available, and (4) all the Individual Defendants are immune from liability, either through absolute or qualified immunity. *See generally id.*

Initially Hill failed to respond, and the Government's motion was granted as unopposed, closing this case. *See* ECF No. 33. In light of Plaintiff's *pro se* status and other extenuating circumstances brought to the Court's attention, Hill was granted an extension to respond. *See* ECF No. 40. On May 29 and August 20 of 2020, Hill filed his opposition and a supplemental brief, respectively. ECF Nos. 57, 65. On August 25, 2020, the Government submitted its reply brief. *See* ECF No. 68. In November of 2022 this matter was officially reopened. *See* ECF No. 79.

## STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(1)

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks

omitted). "[B]ut jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

## II. Federal Rule of Civil Procedure 12(b)(2)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff must meet the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). At the motion to dismiss stage, the court must construe the pleadings and any supporting materials in the light most favorable to the plaintiff, resolving any doubts in favor of jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). The court does not, however, draw "argumentative inferences" in a plaintiff's favor nor does it accept as true a legal conclusion couched as a factual allegation. *See Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511 (1925)). "Because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion." *Woods v. Pettine*, No. 13-cv-290 (PGG), 2014 WL 292363, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotations omitted).

### III.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, courts accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

### IV.     *Pro Se* **Pleadings**

"Courts must afford *pro se* plaintiffs 'special solicitude' before granting motions to dismiss or motions for summary judgment." *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## DISCUSSION

### I.     **Plaintiff's Claims Against Defendants Jean and Owens Are Dismissed**

Hill expressly abandoned his claims against Defendant Jean in his response to the motion to dismiss based on her absolute immunity. *See* ECF No. 57 at 6 ("Jean is Entitled to Absolute Immunity on *Bivens*"). Hill's "express abandonment of his [these] claims should be given effect." *See Bravo v. U.S. Marshals Serv.*, 684 F. Supp. 3d 112, 122 (S.D.N.Y. 2023). Hill additionally failed to respond to the Government's argument that the Court lacks personal jurisdiction over Defendant Owens. *See generally* ECF Nos. 57, 65. The Court will also treat any claim against Defendant Owens as abandoned. *See Romain v. State Farm Fire & Cas. Co.*, 639 F. Supp. 3d 416, 421 n. 3 (E.D.N.Y. 2022) (deeming *pro se* plaintiffs' claims abandoned when they were not addressed in their opposition to a defendant's motion to dismiss).

Therefore, Hill's abandoned claims are dismissed without prejudice on the basis of Defendant Jean's absolute immunity and the Court's lack of personal jurisdiction over Defendant Owens.

## II. Plaintiff's *Bivens* Claims Are Dismissed

In *Bivens*, the United States Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search[es] and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017) (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971)). The Supreme Court has recognized a *Bivens* constitutional claim in two other contexts: a gender discrimination claim against a member of Congress under the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and a claim against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment. *See Carlson v. Green*, 446 U.S. 14, 19 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

### a. A *Bivens* Remedy Is Not Available for Any of Plaintiff's Claims

Recently, the Supreme Court articulated a two-step inquiry for courts to determine whether to imply a *Bivens* cause of action, before reaching the adequacy of a complaint's allegations. First, courts must determine "whether the case presents 'a new *Bivens* context,'—i.e., is it 'meaningfully' different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 582 U.S. at 139–40). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a

8

case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 741, 743 (2020).

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). Because "recognizing a cause of action under *Bivens* is a disfavored judicial activity," a court may not imply a *Bivens* remedy if there is "[e]ven a single sound reason to defer to Congress." *Id.*; *see also id. see* at 493 ("Even in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief." (internal citation omitted)). "Explaining that test, the *Egbert* Court made clear that, effectively, it operates as a bar to a *Bivens* claim in all cases except, perhaps, those involving Fourth, Fifth and Eighth Amendment claims factually indistinguishable from *Bivens*, *Passman*, or *Carlson*." *Cohen v. United States*, 640 F. Supp. 3d 324, 337 (S.D.N.Y. 2022), *aff'd sub nom. Cohen v. Trump*, No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024).

The Court construes Plaintiff's allegations to raise five distinct categories of constitutional violations: (1) obstructed access to the courts, (2) retaliation for grievance complaints, (3) cruel and unusual conditions of confinement, (4) use of excessive force, and (5) deliberate indifference to medical needs. *See generally* SAC. The fifth violation is the only claim somewhat similar to the contexts previously recognized by the Supreme Court in *Bivens*, *Davis*, and *Carlson*. *See Ziglar*, 582 U.S. at 140 (finding claims must be similar to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female

9

secretary; and a claim against prison officials for failure to treat an inmate's asthma"); *White v. Hess*, No. 14CV03339CBALB, 2020 WL 1536379, at *5 (E.D.N.Y. Mar. 31, 2020) (finding access to the courts claims are "different in a meaningful way from previous *Bivens* cases"); *Egbert v. Boule*, 596 U.S. 482, 499 (2022) ("[T]here is no *Bivens* action for First Amendment retaliation."); *Cicchiiello v. Warden Danbury FCI*, No. 3:24CV1240 (VAB), 2025 WL 437305, at *5 (D. Conn. Feb. 7, 2025) (finding that Eighth Amendment claims for non-medical conditions of confinement differ meaningfully from previous *Bivens* cases); *Mendoza v. Edge*, 615 F. Supp. 3d 163, 170 (E.D.N.Y. 2022) ("[P]laintiff's allegations that the defendants used excessive force against him when they responded to the fire he started in his cell . . . fall outside of *Bivens*' purview.").

A damages remedy pursuant to *Carlson* is appropriate in the context a violation of "the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to treat a[] prisoner's asthma, which resulted in the prisoner's death." *Bravo v. U.S. Marshals Serv.*, 684 F. Supp. 3d 112, 122 (S.D.N.Y. 2023) (citing *Carlson*, 446 U.S. 14) (internal citations omitted). When a prisoner's injuries were not life threatening or did not constitute a medical emergency, "[c]ourts have routinely found variances in [the] circumstances and severity render deliberate indifference claims different from *Carlson* and thus arise in a 'new context.'" *Bettis v. Grijalva*, No. 21 CIV. 7505 (GWG), 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023) (collecting cases); *cf. Mendoza*, 615 F. Supp. 3d at 171–72 (finding that a claim based on a failure to treat a COVID-19 infection did not arise under a new *Bivens* context).

On first glance, Hill's claim seems to arise under the same context established by *Carlson*.

> In *Carlson*, the defendants had been "fully apprised" of the "gross inadequacy" of the medical conditions at the plaintiff's prison. They had also been fully apprised of the nature and severity of the plaintiff's medical condition. The defendants failed to provide the plaintiff with medical care for 8 hours after an asthmatic attack. And they gave him

10

> medication that actually made his attack more severe; and treated him with medical equipment that was known to be ineffective. All of that misconduct resulted in the plaintiff's death.

*Bravo*, 684 F. Supp. 3d at 125 (citing *Carlson*, 446 U.S. at 17 n. 1). Like in *Carlson*, Hill brings a claim under the Eighth Amendment for deliberate indifference to an asthma attack he experienced, and the medical care denied for several hours thereafter. *See* SAC at 3–4. Hill also alleges that Defendants were aware of his asthmatic condition and still subjected him to the gas. *See id.* at 4.

Although deeply troubling, these allegations do not maintain that Hill's life was in danger. And even if they did, Plaintiff's allegations regarding the medical care eventually provided to him diverge significantly from the context established in *Carlson*. When Hill received medical care the morning after his cell filled with the O.C. gas, Plaintiff fails to allege that it was inadequate, let alone "affirmatively deleterious treatment," as in *Carlson*. *Bravo*, 684 F. Supp. 3d at 125; *see* SAC at 4 (detailing medications administered to Plaintiff). Accordingly, this claim also presents a new *Bivens* context. *See Bettis*, 2023 WL 4141869, at *6 ("[V]ariances in circumstances and severity render deliberate indifference claims different from *Carlson*.").

As all of Hill's claims arise under a new *Bivens* context, the Court will now consider each in turn and determine "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Bravo*, 684 F. Supp. 3d at 123. In doing so, the Court will weigh "whether alternative remedies exist for addressing the constitutional violations raised." *Id.*

### i. Access to the Courts

Plaintiff argues that the Defendant Officers restricted his access to counsel and to the Courts, violating his First, Fifth, and Sixth Amendment rights. *See* SAC at 7. As far as Plaintiff's claims pertain to his civil matter, "the Sixth Amendment does not govern civil cases." *Turner v.*

*Rogers*, 564 U.S. 431, 441 (2011). Hill additionally alleges that the officers' actions prevented him from initiating proceedings for post-conviction and habeas relief. *See* SAC at 7. The Supreme Court "ha[s] never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021). Therefore, Plaintiff's claims are best interpreted as deprivations of access to the courts, rather than access to counsel. *See Groenow v. Williams*, No. 13 CIV. 3961 PAC JLC, 2014 WL 941276, at *5 (S.D.N.Y. Mar. 11, 2014) (The plaintiff's communications with his attorney about matters other than "a defense to his criminal prosecution or appeal a conviction . . . such as a challenge to the conditions of his confinement, [implicated] his right of access to the courts.").

The Supreme Court has recognized that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). This right is grounded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (collecting cases).

In considering whether any special factors counsel hesitation in extending a damages remedy, the Court considers the fact that Plaintiff could have still pursued a habeas corpus claim after his incarceration at the MCC ended. *See Holmes v. Grant*, No. 03-cv-3426 (RJH) (RLE), 2006 WL 851753, at *13 (S.D.N.Y. Mar. 31, 2006) ("[A]lthough plaintiff claims he is forever barred from pursuing his habeas petition, an alternative course of action with respect to this claim

is to file his habeas petition and request equitable tolling in light of defendants' alleged destruction of his legal materials.").

In a case where a corrections officer confiscated a prisoner's legal papers shortly before the filing deadline, the Second Circuit found the facts "may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000). Where an officer's misconduct, rather than the plaintiff's lack of diligence, prevents the filing of a writ of habeas corpus within the statute of limitations, "[a] petitioner should not be faulted." *Id.* at 136. Therefore, Plaintiff could have pursued habeas relief after October 2016, when he was no longer incarcerated at the MCC, if the Defendant Officers' actions were the cause of his failure to do so timely.

In addition to this alternative remedy, as the *Ziglar* court observed, "in passing the [Prison Litigation Reform Act ("PLRA")], Congress did 'not provide for a standalone damages remedy against federal jailers,' which could 'suggest[] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.'" *White v. Hess*, No. 14CV03339CBALB, 2020 WL 1536379, at *5 (E.D.N.Y. Mar. 31, 2020) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 148–49 (2017)). This provides an independent special factor, sufficient on its own, to counsel hesitation in implying a *Bivens* remedy.

Accordingly, Plaintiff's access to the courts claims present a new *Bivens* context, and special factors counsel against extending a *Bivens* remedy there. These claims are dismissed.

### ii. Retaliation for Grievances

Hill alleges that the Defendant Officers retaliated against him for filing grievances and raising issues with his treatment at the MCC to the courts. *See* SAC at 4, 8–9. However, in *Egbert*,

the Supreme Court explicitly held that "there is no *Bivens* action for First Amendment retaliation." 596 U.S. at 49. "That holding squarely forecloses [Plaintiff's] First Amendment retaliation claim here." *Cohen*, 640 F. Supp. 3d at 337. Accordingly, Hill's retaliation claims are dismissed.

### iii. Conditions of Confinement

Hill alleges that the conditions of his confinement at the MCC violated the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Plaintiff alleges that the state of his cell was unsanitary and inhumane, that several defendant officers sexually harassed him, and that he was denied recreational time for the first month he was incarcerated there. *See* SAC at 2–3 (cell); *id.* at 2, 7–8 (sexual harassment); 3 (recreation).

The Second Circuit has found that "the Executive branch, through the Bureau of Prisons, provides an administrative grievance process for inmates to lodge complaints about their confinement." *Ballard v. Dutton*, No. 23-6416-PR, 2024 WL 4039606, at *2 (2d Cir. Sept. 4, 2024). This remedial structure, along with the availability of relief under the FTCA, indicate that the Court should refrain from extending a *Bivens* remedy to Hill's conditions of confinement claims. *See Nasiruddin v. Pliler*, No. 21-CV-7044 (CS), 2024 WL 2262664, at *10 (S.D.N.Y. May 17, 2024) (no *Bivens* remedy for hot cell conditions and denied recreation time); *Cicchiiello v. Warden Danbury FCI*, No. 3:24CV1240 (VAB), 2025 WL 437305, at *5 (D. Conn. Feb. 7, 2025) (no *Bivens* remedy for sexual harassment by corrections officer). Accordingly, Hill's conditions of confinement claims are dismissed.

### iv. Use of Excessive Force

Hill's allegations regarding the use of O.C. gas raise a claim for excessive use of force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, along with the

related medical treatment claim. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also* SAC at 3–4. The fact that the PLRA "does not provide for a standalone damages remedy against federal jailers . . . suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar*, 582 U.S. at 149; *see id.* at 148 ("[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation.").

Likewise, courts have found that "[a]llowing individual claims for money damages against prison staff would stray from the Supreme Court's guidance that '[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Schulte v. Bureau of Prisons*, No. 20-cv-2795 PGG GWG, 2022 WL 1468017, at *4 (S.D.N.Y. May 10, 2022) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Additionally, "the FTCA provides an inmate or detainee with a remedy for claims arising out of assault, battery, and other torts relating to the acts or omissions of officers of the U.S. Government." *Id.* at *6. All these factors counsel hesitation in implying a *Bivens* remedy to claims for excessive use of force. Accordingly, Hill's excessive force claims are dismissed.

    v. **Deliberate Indifference to Medical Needs**

Last, Hill's claim regarding the Defendant Officers' deliberate indifference to his medical needs arises under the Eighth Amendment. The same factors articulated as to Hill's excessive use of force claim counsel hesitation in extending a *Bivens* remedy to his medical treatment claim. *See Ziglar*, 582 U.S. at 149 (lack of PLRA damages remedy against jailers); *Schulte*, 2022 WL

1468017, at *4 (deference to prison administrators); *id.* at *6 (alternative remedy under the FTCA); *see also Bravo*, 684 F. Supp. 3d at 125 (articulating the same).

It is therefore inappropriate for the Court to extend a *Bivens* remedy to any of the new contexts raised in Hill's complaint. Accordingly, all his *Bivens* claims are dismissed. The Court need not decide whether Hill states a claim for any constitutional violation or the issues of qualified immunity and exhaustion under the PLRA.

### III.     Plaintiff's Exhausted FTCA Claims Remain

The Government moves to dismiss for lack of subject matter jurisdiction Plaintiff's FTCA claims that were not exhausted at the time this lawsuit commenced.[1] *See* ECF Nos. 24 6–8, 68 at 3. Specifically, the Government moves to dismiss any claims arising from Hill's administrative tort complaint that was received by the Bureau of Prisons on May 29, 2018. ECF No. 68 at 3. As stated previously, the complaint was filed on May 31, 2017 and the second amended complaint was filed on May 30, 2018. *See* ECF Nos. 1, 15.

The FTCA states that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). "This requirement is jurisdictional and cannot be waived." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Where a plaintiff files a lawsuit on a claim that has not yet been adjudicated by the relevant agency,

---

[1] While the Government initially moved to dismiss all of Hill's FTCA claims, following his response to the motion, the Government "withdr[ew] its motion … except as it concerns the tort claim received by BOP on May 29, 2018 … [and] reserve[d] the right to renew" the motion. *See* ECF No. 68 at 2–3.

"there [is] a lack of complete exhaustion." *Bettis v. United States*, 346 F.R.D. 34, 40 (S.D.N.Y. 2024). Accordingly, any claim arising from the May 29, 2018 administrative complaint must be dismissed without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Government's motion to partially dismiss the second amended complaint. The Plaintiff's FTCA claims, except those which arise from his May 29, 2018 administrative tort claim, survive. This case will be referred to Magistrate Judge Ona T. Wang for general pre-trial matters in a separate order. The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated:  **March 26, 2025**
        **New York, New York**

                                            **ANDREW L. CARTER, JR.**
                                            **United States District Judge**